Harold E. Simpson, J.
This is a proceeding under article 78 of the Civil Practice Act to review a determination of the New York State Liquor Authority.
The petitioner operates a restaurant at 207 East State Street, Ithaca, New York, and in connection therewith has a license granted by the respondent, the New York State Liquor Authority, which authorizes the petitioner to sell alcoholic beverages for consumption on the premises.
On July 19, 1960, at a meeting the respondent adopted the findings of the hearing officer and found that “ The licensee violated Section 106 (6) of the Alcoholic Beverage Control Law in that he suffered or permitted gambling on the licensed premises on various occasions during the present and preceding license periods and specifically on or about September 20,1959, February 10, 1960, February 11, 1960, and February 13, 1960.”
By an order containing the above recitals, dated July 21,1960, the respondent suspended the petitioner’s license for 90 days, remitting 5 days on a “no contest” plea, 70 days to be served forthwith, and 15 days temporarily deferred.
The order prohibited the petitioner from trafficking in alcoholic beverages for the period beginning on July 26, 1960 at 10:00 a.m. and ending on October 5, 1960 at 10:00 a.m.
*706 The execution of the order has been stayed by the Supreme Court for 30 days from July 27, 1960.
The petitioner attacks the order of the respondent claiming it to be arbitrary, capricious, and abuse of discretion, and excessive. The question for determination is whether on the record the punishment or penalty or judgment is so severe as to be unjust and to shock the conscience of the court.
The petitioner asserts and the respondent rejects the proposition that one measure to be applied to the quality of the penalty imposed upon the petitioner is the penalty imposed in respect of other similar violations by other violators.
Since the penalties imposed are not fixed by law and are within the reasonable discretion of the State Liquor Authority, it would seem that not only the court, but a licensee, must be guided almost entirely by what the State Liquor Authority has done in the past under reasonably similar circumstances. Infliction of a more severe penalty upon one licensee than upon another licensee guilty of .a similar violation is certainly discriminatory and arbitrary.
The petitioner here was called for hearing before pleading commissioner, Earl M. Martin, on May 13, 1960. There was considerable colloquy which, when interpreted, leads to the inevitable conclusion that the State Liquor Authority promised leniency if the licensee pleaded “no contest.” This colloquy continued during an adjourned pleading hearing held on June 21, 1960, before pleading commissioner, J. Vincent Serve. As a result of these two conversations made at the pleading hearings and obviously in reliance upon the statements of the two commissioners that he could expect leniency if he pleaded ‘ ‘ no contest ”, the petitioner, apparently without an attorney, pleaded ‘1 no contest. ’ ’
The return of the respondent constitutes the record upon which the State Liquor Authority acted in its determination of this case. It seems to be something of an investigation of gambling in the City of Ithaca, mostly obtained from the Police Department of the City of Ithaca. There is an unsworn statement given to the police by one Thomas McGee which seems of little probative force, especially since the great number of other statements, many of which absolved the petitioner licensee, are sworn to. The file contains a great deal of hearsay. It contains statements, many of which have nothing to do with the petitioner, and in which the petitioner is not even named. Statements in a file relating to gambling in the City of Ithaca which refer in no way to the petitioner raise no inference against the petitioner and bear no weight upon the question here.
*707 There are statements in the return, however, from which it appears that the determination of the State Liquor Authority that the petitioner violated subdivision 6 of section 106 of the Alcoholic Beverage Control Law was not arbitrary, capricious, an abuse of discretion, or contrary to law.
Presumably there have been few convictions of Ithaca licensees under subdivision 6 of section 106 of the Alcoholic Beverage Control Law by the State Liquor Authority. The petitioner cites three instances of such convictions with the penalty fixed by the State Liquor Authority.
Case No. 1 relates to one Joseph Ciaschi, proprietor of a restaurant at 117 'South Tioga Street, Ithaca, New York, whose gambling seemed to be very much on a par with that of the petitioner here. The file of the Liquor Authority contained in the return contains an unsworn statement by Joseph Ciaschi that he made bets in his place of business. His betting activities, by his own admission, were if not greater than those of the petitioner, at least comparable. In this case by decision dated June 1, 1960, the suspension was for 30 days; 5 days remitted on “ no contest ” plea, 10 days to be served forthwith, execution of the balance of the penalty to wit: 15 days, temporarily deferred. (It should be noted that this decision came down before the petitioner here pleaded “no contest”.)
Case No. 2 relates to a conviction on a “no contest” plea of Italian Society of Mutual Aid, Inc. The following is the language of Edward P. Abbott, attorney for the petitioner contained in his affidavit verified August 13, 1960: 1 ‘ That upon information and belief, on or about February 15,1959, at 9 p.m., the New York State Police staged a surprise raid on the Sons of Italy Lodge (Italian Society of Mutual Aid, Inc.) at 417 West State Street, Ithaca, New York. Uniformed troopers and plainclothes men from the State’s Criminal Intelligence Unit, the Troopers and The Bureau of Criminal Investigation combined forces in the raid. Troopers battered down the door of the Lodge and confiscated $14,649.90, partly from patrons and partly from the dice table. Gambling paraphernalia found were a large dice table, a carnival-type wheel and cards. Twenty-eight arrests were made and those arrested were from Ithaca, in Tompkins County, Fulton, Auburn, Norwich, Oswego, Binghamton, Myers and G-eneva, New York, as well as Williamsport, Pennsylvania. The club bartender touched off a warning buzzer which went from the first floor bar to the second floor area where the gambling was taking place. The local District Attorney, Roger Sovoeool, who also participated in said raid was quoted as saying, ‘ That the Lodge Games, while operated by Ithacans, *708 have been run as a weekly affair over a long period of time and have attracted gamblers and criminal elements from a wide radius, including other cities throughout Central New York.’ The Tompkins County Judge was also quoted, ‘ The crap game at the Sons of Italy was far beyond the 2-bit form of gambling. It was a professional game, with professional players, conducted for the purpose of profit to the club and to the professionals, with the very obvious purpose of extracting money from foolish people whom we generally classify as ‘ ‘ suckers. ’ ’ This organization willfully and knowingly violated the law for the purpose of receiving profit and apparently with the hope and expectation that the local law enforcement officials would permit it to exist * * * This was operated on a different basis than what morally appears to me to be relatively harmless matters. Football pools, etc., though technically illegal, are not so economically harmful ’ ”.
"While this language is on'information and belief, the proper foundation for its consideration here has been laid and it has not been denied.
The penalty in this case, handed down by the Authority on June 1,1960, was a 90-day suspension; 5 days remitted on a “ no contest ” plea, 30 days to be served forthwith, and execution of the remainder of the penalty deferred.
Case No. 3 relates to an establishment at 400 to 404 Stewart Avenue, Ithaca, New York, where there was a conviction for gambling on the premises between August 1,1958 and November 15, 1958, which resulted in a suspension of 7 days.
The petitioner here presents evidence that a 70-day suspension of his license will cause him such financial loss as to put him out of business.
There was talk in the argument at Special Term that the penalty for first conviction for selling liquor to children is a 10-day suspension. This seems to be the well-established policy of the State Liquor Authority. (See Matter of McGinnis Rest. v. Rohan, 6 A D 2d 115.)
The file indicates that the record of the petitioner here has been good and there have been no previous complaints or convictions against him.
It is the conclusion here that the State Liquor Authority acted arbitrarily, capriciously, and abused its discretion. This petitioner had a right to rely upon the fairly implied promise of leniency from an agency of the State of New York.
The penalty imposed on the petitioner who had a right to expect leniency far exceeded penalties imposed for like and *709 greater violations. This constitutes a determination which the Supreme Court has a duty to correct.
Viewed in the light of the other, decisions of the State Liquor Authority, the penalty here should not exceed 30 days suspension.
The determination herein attacked is annulled on the ground that the penalty is excessive, that it is arbitrary, capricious, and constitutes an abuse of the discretion of the State Liquor Authority.
The maximum penalty of the State Liquor Authority shall not exceed suspension of the petitioner’s license for 30 days. The court will not interfere in the matter of leniency by remission of part of the suspension by reason of a plea of ‘ ‘ no contest ’ ’. This is a matter for the conscientious administration of justice by the State Liquor Authority. Nor will the court interfere Avith any policy of deferment of a portion of the suspension since that is peculiarly a matter of the proper administration of the duties of the State Liquor Authority. With respect to any remission or deferment of any part of a suspension of not to exceed 30 days, this is left to the discretion and conscience of the State Liquor Authority.
An order may be submitted annulling the determination and remitting the matter to the State Liquor Authority for further proceedings not inconsistent Avith this decision. The petitioner shall have costs in the amount of $50.